KELLY, Judge:
 

 In this appeal and cross-appeal, we must determine whether the trial court’s findings of fact are adequately supported by evidence. In addition, we are asked to determine whether the trial court properly concluded that appellee, Prudential Property and Casualty Insurance Company, acted in bad faith in partially disputing payment of appellant’s, Alexander Terletsky’s, uninsured motorist claim. We hold that the trial court’s factual findings have adequate support in the evidence. We further hold that appellee had a rational basis for disputing appellant’s claim; thus, the trial court’s determination of bad faith was improper. Accordingly, we reverse.
 

 The relevant facts and procedural history are as follows. On March 5, 1989, appellants, Alexander and Marina Terletsky (the Terletskys) were involved in a motor vehicle accident with uninsured motorist, Michael Brown. The police report of the accident indicated that no injuries were sustained. Following the accident, the Terletskys filed uninsured motorist claims against their carrier, appellee, Prudential Property and Casualty Insurance Company (Prudential). In addition, Michael Brown filed a liability claim against Prudential which was assigned to the same claims adjuster as the Terletskys’ uninsured motorist claims. On September 5, 1989, Prudential settled Michael Brown’s liability claim for $2,000.00 and a waiver of subrogation rights. On September 27, 1989, in connection with the investigation of the accident and in an
 
 *112
 
 attempt to resolve medical questions relating to the Terletskys, Prudential requested independent medical examinations at Penn Diagnostic Center of both Marina and Alexander Terletsky. Counsel for the Terletskys refused the request. However, the Terletskys’ counsel proposed an alternative plan for the examinations which was subsequently rejected by Prudential.
 
 [1]
 

 As of December, 1989, the Terletskys had submitted to Prudential $5,600.00 in medical bills for the treatment of Marina Terletsky’s alleged injuries and $9,100.00 in medical bills for the treatment of Alexander Terletsky. Alexander Terletsky did not sustain a wage loss in his employment as an engineer. Marina Terletsky sustained, but did not claim, a few days wage loss as a paralegal.
 

 The Terletskys demanded settlement of their uninsured motorist claims on December 14, 1989, in the amount of their policy limits. The Terletskys’ policy provided $100,000.00/ $300,000.00 coverage which allowed $100,000.00 of uninsured motorist coverage for each of the two cars they owned and $300,000.00 per accident. Also, on December 14, 1989, the Terletskys demanded arbitration of their claim disputes pursuant to the arbitration clause in their policy. The clause provided that arbitration could be invoked when the insurer and insured could not reach an agreement.
 
 [2]
 

 The neutral arbitrator for the arbitration panel was selected in June, 1990. Prudential then petitioned the arbitrators to
 
 *113
 
 compel the independent medical examinations of the Terletskys. On July 6, 1990, the arbitrators ordered the independent medical examinations; however, on July 19, 1990, the Terletskys sought reconsideration. After hearing arguments on September 19, 1990, the arbitrators again ordered that the Terletskys submit to the independent medical examinations as well as provide Prudential with statements under oath. Consequently, the independent medical examinations took place on October 3, 1990.
 

 On October 17, 1990, Prudential offered $40,000.00 for the bodily injury claim of Alexander Terletsky and $17,500.00 for the bodily injury claim of Marina Terletsky. In response, counsel for the Terletskys indicated that he would “not blink” at any offer below $100,000.00 for each claimant.
 

 An arbitration hearing was held on December 27, 1990, at which Alexander Terletsky testified. The hearing on Marina Terletsky’s claim, however, was continued for the purpose of receiving the videotaped testimony of the Terletskys’ orthopedist. In connection with the December 27, 1990 hearing, Prudential’s house counsel, Anna Pace, interviewed Michael Brown by telephone. Michael Brown agreed to accept a subpoena and testify before the arbitrators on behalf of Prudential; however, he never received the subpoena and he never testified. Following the hearings, Anna Pace spoke with Prudential’s arbitrator regarding the status of the arbitration awards.
 

 On January 22, 1991, the arbitrators awarded Alexander Terletsky the amount of $125,000.00 for his uninsured motorist claim with the following caveat:
 
 [3]
 

 The Award is governed by the coverage available, that is to say, if the coverage is less than the amount of the Award, the claimant may only receive the amount of the coverage.
 

 Arbitration Award of Alexander Terletsky, January 22, 1991.
 

 Subsequently, Prudential decided to appeal the award of the arbitrators. On February 7, 1991, Prudential’s claims repre
 
 *114
 
 sentative for the case, Laurie Trythall, instructed Prudential’s house counsel to appeal the award on the grounds that the Terletskys policy provided for only $100,000.00 liability and “stacking”
 
 [4]
 
 was not permitted. The appeal was based on
 
 Chartan v. Chubb Corp.,
 
 725 F.Supp. 849 (E.D.Pa.1989)
 
 (Chartan I
 
 ).
 
 [5]
 
 However, Prudential’s corporate counsel, Clayton W. Boulware, had advised management that “stacking” was now permitted in Pennsylvania. The “Boulware memo” stated in part:
 

 Act 6 and recent Court decisions have effectively attenuated the
 
 Chartan
 
 holding; so much so that UM and UIM coverages are not capped at the maximum single policy liability limit.
 

 ❖ * * * * *
 

 It can be reasonably concluded that an insured retains his or her right to stack uninsured and underinsured coverages, even if that stack amount exceeds the maximum single policy liability limit[
 
 6
 
 ]
 

 Memorandum of Clayton W. Boulware, January 8, 1991.
 

 On February 20, 1991, Prudential, represented by outside counsel, filed a petition to modify the award of the arbitrators. The petition did not refer to the stacking issue, but stated that the award of the arbitrators was deficient in form. Prudential requested that the award to Alexander Terletsky be reduced
 
 *115
 
 to $100,000.00. A hearing on the request for modification was scheduled for July 12, 1991.
 

 Between February and June of 1991, Prudential paid Marina Terletsky $125,000.00 in satisfaction of the arbitration award in her favor and paid Alexander Terletsky $100,000.00 of the $125,000.00 award in his favor. Subsequently, in June of 1991, Prudential paid Alexander Terletsky the $25,000.00 outstanding on his arbitration award. Thereafter, the hearing on the request for modification of the arbitration award was cancelled.
 

 On February 22, 1991, Alexander Terletsky filed a complaint against Prudential which alleged that Prudential had acted in bad faith during the handling of his uninsured motorist claim. Additionally, on November 12, 1991, the Terletskys jointly filed a complaint against Prudential which alleged that Prudential had acted in bad faith during the handling of Marina Terletsky’s uninsured motorist claim. The complainants sought damages pursuant to 42 Pa.C.S.A. § 8371.
 
 [7]
 
 The actions were consolidated for trial and heard by arbitrators of the Philadelphia Court of Common Pleas on August 17, 1992. An appeal was taken from the arbitrator’s award.
 

 A four day non-jury trial was held before the trial court from February 18, 1993 to February 23, 1993. The trial court found in favor of Alexander Terletsky on April 2, 1993, and concluded as a matter of law that Prudential had acted in bad faith with respect to the handling of Alexander Terletsky’s uninsured motorist claim. The trial court found that the bad faith commenced on or about February 6, 1991 and ended in mid-July when Prudential satisfied all claims and cancelled the petition to modify the arbitration award. For the bad faith claim, the trial court awarded Alexander Terletsky $15,000.00 in counsel fees for services in connection with the proceedings. The trial court, however, did not award punitive damages. Further, the trial court found in favor of Prudential on Marina
 
 *116
 
 Terletsky’s bad faith claim and issued extensive findings of fact and conclusions of law. Following the award, the Terletskys and Prudential filed motions for post-trial relief. Prudential filed post-trial motions seeking judgment notwithstanding the verdict. The Terletskys filed post-trial motions requesting additional findings of fact and alleging error on the part of the trial court in not awarding punitive damages. Additionally, the Terletskys filed an objection to Prudential’s post-trial motions.
 
 [8]
 
 The trial court issued its opinion on January 19, 1994 which incorporated its original findings of fact and conclusions of law. The trial court denied all post-trial motions. This timely appeal and cross-appeal followed.
 

 On appeal, the Terletskys present the following issues for our review:
 

 1. WAS JUDGE CAESAR CORRECT IN NOT CONSIDERING PLAINTIFFS’ REQUEST FOR ADDITIONAL FINDINGS OF FACT, THEREBY NOT TAKING INTO ACCOUNT ALL OF THE EVIDENCE AGAINST DEFENDANT PRIOR TO ENTERING JUDGMENT.
 

 2. DID THE TRIAL COURT HOLD PLAINTIFFS TO AN INORDINATELY HIGH BURDEN OF PROOF TO OBTAIN PUNITIVE DAMAGES?
 

 3. IS ALEXANDER TERLETSKY ENTITLED TO PUNITIVE DAMAGES PURSUANT TO JUDGE CAESAR’S REASONING IN HIS CONCLUSIONS OF LAW?
 

 4. WAS ALEXANDER TERLETSKY ENTITLED TO PUNITIVE DAMAGES FOR DEFENDANT, PRU
 
 *117
 
 DENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY’S INSISTENCE ON AN UNNECESSARY INDEPENDENT MEDICAL EXAMINATION?
 

 5. WERE PLAINTIFFS ALEXANDER AND MARINA TERLETSKY ENTITLED TO PUNITIVE DAMAGES AS A RESULT OF DEFENDANT, PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY REQUESTING SWORN STATEMENTS WHICH WERE NOT USED IN THE EVALUATION OF PLAINTIFFS’ CLAIMS?
 

 6. WERE THE EXCEPTIONALLY LOW OFFERS MADE TO PLAINTIFFS PRIOR TO THE UNINSURED MOTORIST ARBITRATION ALSO INDICATIVE OF DEFENDANT’S BAD FAITH REQUIRING A PUNITIVE DAMAGE AWARD IN FAVOR OF ALEXANDER AND MARINA TERLETSKY?
 

 7. WAS ANNA C. PACE, ESQUIRE’S INTERFERENCE WITH THE DELIBERATIONS OF ALEXANDER TERLETSKY’S CLAIM BAD FAITH?
 

 8. WAS A CONFLICT OF INTEREST CREATED BY DEFENDANT, PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY’S ALLOWING THE SAME ADJUSTER TO HANDLE BOTH MICHAEL BROWN’S THIRD-PARTY CLAIM AND PLAINTIFFS’ UNINSURED MOTORIST CLAIMS INDICATIVE OF BAD FAITH?
 

 9. WAS THE TRIAL COURT’S DENIAL OF PLAINTIFFS’ PRELIMINARY OBJECTIONS TO DEFENDANT’S POST-TRIAL MOTIONS INCORRECT?
 

 The Terletskys’ Brief at 4-5.
 

 Prudential raises the following issues in its cross-appeal:
 

 1. WAS NOT THE LOWER COURT’S VERDICT AGAINST THE WEIGHT OF THE EVIDENCE?
 

 2. IS NOT THE LOWER COURT’S VERDICT CONTRARY TO THE LAW?
 

 
 *118
 
 3. DID NOT THE LOWER COURT ERR IN FAILING TO CONSIDER THE UNREBUTTED TESTIMONY OF ANNA PACE, WILLIAM SWARTZ, THOMAS SARNESE AND JOSEPH CUNNINGHAM ON THE ISSUE OF DEFENDANT PRUPAC’S REASONABLENESS IN RELYING ON THE
 
 CHARTAN
 
 DECISION AND OTHER CASES HOLDING THAT AN INSURED WAS
 
 NOT
 
 PERMITTED TO STACK UNINSURED MOTORIST COVERAGE LIMITS ABOVE THE LIABILITY LIMITS?
 

 4. DID NOT THE LOWER COURT ERR IN FAILING TO CONSIDER THE TESTIMONY OF PRUPAC WITNESSES THAT THEY OBTAINED AN OPINION FROM OUTSIDE COUNSEL THAT THEY HAD A .LEGAL BASIS FOR DISPUTING PAYMENT OF THE $25,000 AS:
 

 (a) STACKING WAS NOT RAISED BY PLAINTIFFS AT THE UNDERLYING UNINSURED MOTORIST HEARING, AND
 

 (b) THE $125,000 AWARD EXCEEDED THE POLICY LIMITS AND STACKING WAS A DEBATABLE ISSUE AT THAT TIME UNDER PENNSYLVANIA LAW?
 

 5. DID NOT THE LOWER COURT ERR IN FAILING TO CONSIDER THE UNREBUTTED TESTIMONY OF PRUPAC WITNESSES THAT PRUPAC’S CORPORATE COUNSEL, THE AUTHOR OF THE BOULWARE MEMO, OPINED TO A PRUPAC CLAIM REPRESENTATIVE (THOMAS SARNESE) THAT A VALID ARGUMENT WAS AVAILABLE AGAINST STACKING AS THE TERLETSKY CLAIM AROSE PRIOR TO THE ENACTMENT OF ACT 6 AND THE MEMO ADDRESSED CASES ARISING
 
 AFTER
 
 THE PASSAGE OF ACT 6?
 

 6. DID NOT THE LOWER COURT ERR IN FINDING THAT PRUPAC ACTED IN BAD FAITH AFTER FEBRUARY 7, 1991 BECAUSE PLAINTIFF ALEX
 
 *119
 
 ANDER TERLETSKY FAILED TO PROVE BY CLEAR AND CONVINCING EVIDENCE THAT:
 

 (a) PRUPAC DID NOT HAVE A REASONABLE BASIS FOR PARTIALLY DISPUTING PAYMENT OF THE ARBITRATION AWARD
 

 (b) PRUPAC RECKLESSLY DISREGARDED ITS ALLEGED LACK OF A REASONABLE BASIS FOR NON-PAYMENT OF $25,000 FOR APPROXIMATELY SIX (6) MONTHS?
 

 7. DID NOT THE LOWER COURT ERR IN FINDING THAT PRUPAC’S POSITION REGARDING PAYMENT OF THE $25,000 “TOOK ON THE CHARACTER OF A VENDETTA” AS THERE WAS NO EVIDENCE TO SUPPORT SUCH A FINDING FOR THE TIME PERIOD SUBSEQUENT TO FEBRUARY 7, 1991?
 

 8. DID NOT THE LOWER COURT ERR IN ITS FINDINGS OF FACT, NOS. 16(a), (b), (c) and (d) WHICH WERE INCOMPLETE AND NOT REPRESENTATIVE OF THE ENTIRE RECORD AND IGNORED BINDING UNREBUTTED CREDIBLE EVIDENCE INTRODUCED BY PLAINTIFFS’ COUNSEL ON CROSS-EXAMINATION OF PRUPAC WITNESSES WHICH SHOWED THE PRUPAC’S DECISION-MAKING AND CONDUCT IN DISPUTING THE $25,000 WAS NOT RECKLESS?
 

 9. WAS NOT PRUPAC ENTITLED TO A NON-SUIT AS PLAINTIFFS FAILED TO PROVE BAD FAITH BY CLEAR AND CONVINCING EVIDENCE?
 

 10. DID NOT THE LOWER COURT ERR IN ADMITTING EVIDENCE RELATING TO PRUDENTIAL’S ACTIONS AND CONDUCT WHICH OCCURRED PRIOR TO JULY 1, 1990, THE DATE ON WHICH THE BAD FAITH STATUTE BECAME EFFECTIVE?
 

 11. DID NOT THE LOWER COURT ERR IN AWARDING PLAINTIFFS’ COUNSEL $15,000 FOR ATTORNEYS FEES WHERE MUCH OF HIS PREPARA
 
 *120
 
 TION AND TRIAL TIME WAS SPENT ON ISSUES UNRELATED TO PRUPAC’S ALLEGED BAD FAITH CONDUCT
 
 SUBSEQUENT
 
 TO FEBRUARY 7, 1991 AND THE FEE AWARD SHOULD HAVE BEEN PRO-RATED?
 

 12. DID NOT THE LOWER COURT ERR IN AWARDING ANY COUNSEL FEES AS THERE WAS NO EVIDENCE THAT PLAINTIFFS ENTERED INTO ANY FEE AGREEMENT FOR THIS BAD FAITH SUIT?
 

 Prudential’s Brief at 1-4.
 

 As the Terletskys and Prudential have raised similar issues on appeal, we will review them together. Initially, we consider the trial court’s findings of fact. The Terletskys and Prudential both contend that the trial court erred in its factual findings. We note the following standard in addressing these claims:
 

 The role of an appellate court in reviewing findings of fact is to determine whether the findings are supported by competent evidence and whether the trial court committed error in the application of the law; the findings of a trial court in a nonjury case must be given the same weight and effect on appeal as the verdict of a jury, and those findings will not be disturbed on appeal absent errors of law or unsupported by competent evidence in the record.
 
 Porter v. Katas,
 
 409 Pa.Super. 159, 597 A.2d 709 (1991). The test is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.
 
 Stahli v. Wittman,
 
 412 Pa.Super. 281, 603 A.2d 583 (1992).
 

 American States Insurance Company v. Maryland Casualty Company,
 
 427 Pa.Super. 170, 192, 628 A.2d 880, 891 (1993). Further, “[i]t is well-established that decisions regarding the weight and the credibility of testimony are within the province of the trier of fact and will not be disturbed upon our cold review of the record.”
 
 Id.
 
 (citing
 
 Gemini Equipment Co. v.
 
 
 *121
 

 Pennsy Supply, Inc.,
 
 407 Pa.Super. 404, 595 A.2d 1211 (1991);
 
 In Re New 12th Ward Republican Club,
 
 412 Pa.Super. 255, 603 A.2d 205 (1992)). Moreover, as a fact finder, it is a judge’s prerogative to believe part of a witness’ testimony and find him mistaken as to the other part.
 
 Miller v. C.P. Centers Inc.,
 
 334 Pa.Super. 623, 629, 483 A.2d 912, 915 (1984) (citing
 
 Walker v. Martin,
 
 214 Pa.Super. 287, 257 A.2d 619 (1969)).
 

 The Terletskys assert that the trial court erred in not considering their request for additional findings of fact, thereby not taking into account all of the evidence against Prudential prior to entering judgment. Specifically, the Terletskys maintain that the trial court should have found that no basis existed for the independent medical examination or the sworn statements, that the independent medical examination was simply a cost-cutting measure, that Anna Pace interfered with the arbitration deliberation process and that it was a conflict of interest to use the same claims adjuster to defend the third-party claims of Michael Brown and the uninsured motorist claims of the Terletskys. We disagree.
 

 The trial court’s findings of fact are adequately supported by competent evidence. First, witness testimony indicates that a legitimate medical basis existed for the independent medical examinations. There were conflicting doctor’s opinions with regard to the injuries of Alexander Terletsky (N.T. February 18, 1993 at 93), and there was a specific question as to Alexander Terletsky’s back injury. (N.T. February 19, 1993 at 96). Further, questions existed as to the medical treatments of Marina Terletsky.
 
 (Id.
 
 at 27-28). Next, there is no evidence to suggest that the sworn statements requested by Prudential lacked basis. On the contrary, evidence indicates that although a summary of the statements was sufficient for review by management, the statements were expected to be reviewed for the uninsured motorist claims.
 
 (Id.
 
 at 97-98).
 

 Additionally, there is no indication that Anna Pace interfered with the deliberation process. Anna Pace stated that she had spoken with the arbitrator and that he had
 
 *122
 
 informed her of the status of the arbitration awards.
 
 [9]
 
 Although Anna Pace may have been given specific information regarding the arbitration award status (N.T. February 22, 1993 at 164) (Plaintiffs Exhibit 22), there is no evidence that she interfered with or influenced the deliberations of the arbitrators.
 

 Finally, the evidence does not support a conflict of interest on the part of the claims adjuster. The adjuster was handling both the Terletskys’ uninsured motorist claims and Michael Brown’s liability claim; however, there is no evidence that claims adjuster performed her duties in a manner which was partial toward Michael Brown. In contrast, Michael Brown’s claim against the Terletskys was settled for a relatively nominal amount of money. Further, there is no indication that the claims adjuster attempted to extract testimony from Michael Brown that was detrimental to the Terletskys in exchange for a generous settlement of his claim against the Terletskys. Moreover, the trial court judge was unconcerned with the fact that the claims adjuster was handling both claims.
 
 See Hudock v. Donegal Mutual Insurance Company,
 
 438 Pa. 272, 264 A.2d 668 (1970) (while insurance adjuster had a duty to his principal, the insurance company, to perform whatever tasks assigned to him, such duty did not serve to create a contractual obligation between the adjuster and the insured).
 

 In its cross-appeal, Prudential argues that the trial court erred in its findings of fact 16(a), (b), (c) and (d) because those facts were incomplete and not representative of the entire record and ignored unrebutted credible evidence which showed that Prudential’s conduct in disputing the $25,000.00 was not reckless.
 
 [10]
 
 We disagree.
 

 
 *123
 
 Initially, we note that the trial court’s findings of fact 16(a), (b), (c) and (d) are well supported by evidence.
 
 [11]
 
 However, Prudential has failed to include any evidentiary support for its contention that these findings are incomplete and not representative of the record.
 
 [12]
 
 Thus, Prudential has contravened
 
 *124
 
 the Pennsylvania Rule of Appellate Procedure 2119.
 
 See Dalton v. Dalton,
 
 409 Pa.Super. 258, 597 A.2d 1192 (1991) (appellant fails to develop any argument; we will not conjecture any theory absent appellant’s consideration of this issue);
 
 Giant Markets v. Sigma,
 
 313 Pa.Super. 115, 459 A.2d 765 (1983) (where argument is not carried forward in the brief, it will not be considered). Hence, this issue is deemed waived. Therefore, we conclude that the trial court’s factual findings are supported by competent evidence and will not be disturbed.
 

 Next, we address the trial court’s finding of bad faith. The Terletskys claim that the trial court failed to include additional acts of bad faith in making its determination. Prudential, however, avers that the trial court’s initial finding of bad faith was erroneous.
 

 We recognize that there is no common law remedy in Pennsylvania for bad faith on the part of insurers.
 
 D ’Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company,
 
 494 Pa. 501, 507, 431 A.2d 966, 970 (1981);
 
 Romano v. Nationwide Mutual Fire Ins. Co.,
 
 435 Pa.Super. 545, 552, 646 A.2d 1228, 1232 (1994). However, the Pennsylvania Legislature has created a statutory remedy in 42 Pa.C.S.A. § 8371 which became effective on July 1, 1990. The statute provides that:
 

 In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
 

 (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus
 
 3%
 

 (2) Award punitive damages against the insurer.
 

 (3) Assess court costs and attorney fees against the insurer.
 

 42 Pa.C.S.A. § 8371. In the insurance context, the term bad faith has acquired a particular meaning:
 

 
 *125
 

 Insurance.
 
 “Bad faith” on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty
 
 (ie.,
 
 good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
 

 Black’s Law Dictionary 139 (6th ed. 1990) (citations omitted).
 

 Rottmund v. Continental Assurance Company,
 
 813 F.Supp. 1104, 1108-09 (E.D.Pa.1992);
 
 Coyne v. Allstate Insurance Company,
 
 771 F.Supp. 673, 677-78 (E.D.Pa.1991). Further, bad faith must be proven by clear and convincing evidence and not merely insinuated.
 
 Cowden v. Aetna Casualty and Surety Company,
 
 389 Pa. 459, 472, 134 A.2d 223, 229 (1957);
 
 Hall v. Brown,
 
 363 Pa.Super. 415, 420, 526 A.2d 413, 416 (1987),
 
 appeal denied,
 
 522 Pa. 624, 564 A.2d 916 (1989);
 
 United States Fire Insurance Company v. Royal Insurance Company,
 
 759 F.2d 306, 309 (3d Cir.1985). Finally, to recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.
 
 American Franklin Life Insurance Company v. Galati,
 
 776 F.Supp. 1054, 1064 (E.D.Pa.1991);
 
 see also D’Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company, supra.
 

 The Terletskys allege that Prudential’s low settlement offers prior to the uninsured motorist arbitration were indicative of bad faith.
 
 [13]
 
 We disagree.
 

 Prudential offered Marina Terletsky $17,500.00 in settlement of her uninsured motorist claim. Additionally, Alexan
 
 *126
 
 der Terletsky was offered $40,000.00 in settlement of his uninsured motorist claim. (N.T. February 19, 1993 at 48). Prudential’s offers were reasonably based, thus they did not constitute bad faith. Prudential took into account many factors in determining the offers. (N.T. February 18, 1993 at 66). For example, Prudential considered medical questions that existed with regard to the Terletskys’ claims. The diagnosis of Marina Terletsky’s “frozen shoulder” was unclear (N.T. February 19, 1993 at 120), and there was a question as to whether she sustained a soft tissue injury.
 
 (Id.
 
 at 119-20). Additionally, there were conflicting reports as to the severity of her injuries.
 
 (Id.
 
 at 67-68). Neither Marina nor Alexander Terletsky claimed a wage loss as a result of the accident (N.T. February 18, 1993 at 143), and the police report of the accident did not indicate that any passengers had been injured.
 
 (Id.
 
 at 130). Finally, the minor damage to the car during the accident suggested that the passengers had not received serious injuries.
 
 (Id.
 
 at 155).
 

 In addition, Prudential assessed the liability of each driver before making an offer. (N.T. February 19, 1993 at 61).
 
 See Day v. State Farm Mutual Insurance Company,
 
 261 Pa.Super. 216, 396 A.2d 3 (1978) (Uninsured Motorist Act was intended to provide recovery by an insured only those damages which he would have received had the uninsured motorist maintained liability insurance). The location of the damage to the cars, for example, entered into the liability evaluation because it indicated that Michael Brown had successfully completed his turn before the impact.
 
 (Id.
 
 at 58). The probable liability of each driver was set at fifty-fifty
 
 (Id.
 
 at 61); therefore, the offers made to the Terletskys were fifty percent lower than the value of the case.
 
 (Id.
 
 at 62). Finally, Prudential determined that Michael Brown was a credible witness and, thus, his testimony was also considered in reaching a settlement offer. Consequently, Prudential’s initial settlement offers to the Terletskys had a reasonable basis. Accordingly, we conclude that the offers were not indicative of bad faith.
 

 
 *127
 
 On cross-appeal, Prudential contends that the trial court’s finding of bad faith was against the weight of the evidence.
 
 [14]
 
 We agree.
 

 Our scope of review on a weight of evidence claim is limited. We will respect the trial court’s finding with regard to credibility of the evidence unless it can be shown that the determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.
 
 Gemini Equipment v. Pennsy Supply, supra,
 
 407 Pa.Super. at 413, 595 A.2d at 1215 (citations omitted). We address Prudential’s claim mindful of this standard.
 

 To recover under a claim of bad faith, the Terletskys were required to show that Prudential lacked a reasonable basis for partially denying payment of the arbitration award and that Prudential recklessly disregarded a lack of reasonable basis in denying the payment. Prudential’s actions, however, were reasonably based. Prudential was justified in relying on
 
 Chartan v. Chubb Corp., supra,
 
 in disputing the remaining portion of the arbitration award. At the time of the Terlet
 
 *128
 
 skys’ accident, Pennsylvania law regarding the “stacking” issue was unsettled. Similarly, federal courts interpreting Pennsylvania law could not reach an agreement on the issue. In
 
 Chartan v. Chubb Corp., supra,
 
 the federal court held that an insured could not “stack” uninsured motorist coverage in an amount that exceeds the insured’s liability coverage.
 
 Id.
 
 Prudential’s claims manager, William Swartz, stated that Prudential had adopted this philosophy on every claim it handled, thus, it would not pay claims or awards above the bodily injury limit of the policy. (N.T. February 19, 1993 at 135-36). Further, Swartz admitted that although he was familiar with the cases that followed
 
 Chartan v. Chubb Corp., supra,
 
 he was also aware of federal cases that disagreed with its holding.
 
 (Id.
 
 at 130-31). However, he testified that he was unaware of any Pennsylvania Superior Court or Pennsylvania Supreme Court cases that addressed this specific stacking issue.
 
 (Id.)
 
 Therefore, he believed that Prudential had a reasonable basis for partially disputing payment and filing a petition to modify the arbitration award.
 
 (Id.
 
 at 138).
 

 Additionally, the Boulware memo does not indicate that Prudential’s actions lacked a reasonable basis. In the memo, Clayton Boulware, Prudential’s general corporate counsel, advised Prudential -with regard to the Terletskys uninsured motorist claims that stacking was permitted. (Memorandum of Clayton Boulware, January 8, 1991). However, the memo discussed the state of the law as it existed after the enactment of Act 6.
 
 (Id.)
 
 Anna Pace reviewed the memo and later determined that an appealable issue existed because the Terletskys’ claim was made prior to the enactment of Act 6, thus the reasoning in the Boulware memo would not apply.
 
 (Id.)
 

 Moreover, Prudential’s actions were reasonably based because Prudential obtained advice of outside counsel with regard to the Terletskys’ claims. Prudential claims representative, Trythall, and Prudential claims manager, Swartz, both consulted outside counsel about the issue of “stacking” in Pennsylvania. (N.T. February 18, 1993 at 110; N.T. February 19, 1993 at 138). Outside counsel Joseph Cunningham testified that he had advised Prudential as to the case law
 
 *129
 
 relating to “stacking” (N.T. February 22, 1993 at 24), and stated that at the time of Terletskys’ claim, he believed that the law in Pennsylvania regarding “stacking” of uninsured motorist claims was in flux and that various companies were relying on the
 
 Chartan
 
 decision.
 
 (Id.
 
 at 220). Therefore, we conclude that Prudential had a reasonable basis for disputing a portion of Alexander Terletsky’s arbitration award. Thus, the Terletskys have not proven that Prudential acted in bad faith.
 
 [15]
 
 Hence, the Terletskys are not entitled to damages under the “bad faith” statute 42 Pa.C.S.A. § 8371.
 

 Consequently, due to our disposition of the bad faith claim, we need not address the Terletskys’ claims with regard to punitive damages. Additionally, we need not consider Prudential’s claims on cross appeal relating to the imposition of counsel fees and the retroactive application of the bad faith statute.
 
 [16]
 
 Accordingly, we reverse the trial court’s finding of bad faith.
 

 Order reversed.
 

 CAVANAUGH, J., concurs in the result.
 

 [1]
 

 . The Terletskys’ counsel offered an alternative plan on October 25, 1989 under which he would choose one of three physicians who were named by Prudential but were not associated with Penn Diagnostic Center. N.T. February 19, 1993 at 38.
 

 [2]
 

 . The arbitration provision provided as follows:
 

 Arbitration
 

 Whether the insured is legally entitled to recover damages, and the actual amount we’ll pay under this part, will be determined by agreement between the insured person and us. If no agreement can be reached, upon written demand of either party, the matter will be submitted for arbitration according to the rules of the American Arbitration Association. Both we and the insured person agree to be bound by the decision of the arbitrators.
 

 Terletskys’ Insurance Policy at 21.
 

 [3]
 

 . The arbitrators also awarded Marina Terletsky $125,000.00 for her uninsured motorist claim.
 

 [4]
 

 . "Stacking is where a claimant adds all available policies together to create a greater pool in order to satisfy his actual damages.” 12A
 
 Couch on Insurance 2d
 
 § 45:651 at 207 (1981). It "permits the total amount of uninsured motorist coverage provided for all vehicles listed in an insurance policy to be applied to the damages resulting from an accident involving only one of the vehicles.”
 
 Rhody v. State Farm Mut. Ins. Co.,
 
 771 F.2d 1416, 1418 (10th Cir.1985).
 

 West American Insurance Company v. Park,
 
 933 F.2d 1236, 1237 n. 1 (3rd Cir.1991).
 

 [5]
 

 .
 
 Chartan v. Chubb Corp.,
 
 725 F.Supp. 849 (E.D.Pa.1989)
 
 (Chartan I),
 
 held that in an uninsured motorist claim, the insured could recover no more than the liability limits that the insured had purchased to protect a single individual.
 
 Id.
 

 [6]
 

 . Act 6, which refers to an omnibus act that includes 75 Pa.C.S.A. § 1738 which authorizes “stacking,” did not become effective until July 1, 1990.
 

 [7]
 

 . The Terletskys’ sought damages under the “bad faith” statute which allows the court to award interest, punitive damages and counsel fees upon a finding of bad faith on the part of the insurer. 42 Pa.C.S.A. § 8371.
 

 [8]
 

 . The Terletskys argue that the trial court erred in denying their objections to Prudential’s post-trial motions. Specifically, the Terletskys maintain that Prudential’s post-trial motion brief was not filed in a timely manner, thus the court abused its discretion in failing to dismiss Prudential’s post-trial motions. However, when a trial court elects to hear untimely post-trial motions and addresses the alleged error on the merits, we are bound to review the merits.
 
 Bilec v. Auburn & Associates, Inc. Pension Trust,
 
 403 Pa.Super. 176, 181 n. 2, 588 A.2d 538, 540 n. 2 (1991) (citing
 
 Kurtas v. Kurtas,
 
 521 Pa. 105, 555 A.2d 804 (1989);
 
 Donegel Mutual Insurance Co. v. State Farm,
 
 377 Pa.Super. 171, 546 A.2d 1212 (1988)).
 

 [9]
 

 . In response to a question regarding her conversation with the arbitrator, Anna Pace stated:
 

 I recall having spoken to Mr. Parks [and] he advised me that the award as to Alexander Terletsky had been made and was final and he told me the amount, and that the award as to Marina Terletsky was still pending, that deliberations were still under way.
 

 N.T. February 22, 1993 at 145.
 

 [10]
 

 . The trial court’s findings of fact 16(a), (b), (c) and (d) are as follows:
 

 
 *123
 
 16. a. On February 7, 1991, claims representative Trythall instructed Prudential's house counsel to "appeal.” The alleged ground for “appeal” was that the policy provided for $100,000.00 liability for claimant and “stacking” was not permitted, as held in
 
 Chartan
 
 v.
 
 Chubb Corp.,
 
 725 F.Supp. 849 (E.D.Pa.1989)
 
 (Chartan I).
 
 (P2). Trythall took this position notwithstanding that house counsel, Anna Pace, advised her on that same day that “Corporate advised we will no longer argue Chartran [sic] issue.”
 

 b. Under date of January 8, 1991, corporate counsel for Prudential, Clayton W. Boulware, Esquire, had advised management, that
 

 Act 6 and recent Court decisions have effectively attenuated the
 
 Chartan
 
 holding; so much so that UM and UIM coverages are not capped at the maximum single policy liability limit.
 

 * Sj! * Si? * *
 

 It can be reasonably concluded that an insured retains his or her right to stack uninsured and underinsured coverages, even if that stacked amount exceeds the maximum single policy liability limit.
 

 c. In a log note dated February 14, 1991, Trythall states that Ms. Pace "wants to know if we want to appeal, told her I already advised her we do. She [is] arguing Boulware’s memo on ‘Chartran’ [sic] issue states we shouldn’t. Advised [supervisor spoke with] Boulware and he said it applied to post-Act 6, can argue Chartran [sic] if we [want]. [Spoke with claims unit manager] Spiro, he’ll discuss [with] John Gordon.”
 

 d. On February 20, 1991, Defendants, by their outside counsel, filed a petition to modify the award of the Arbitrators as # 91001752-16-2 in Bucks County. The petition and accompanying Memorandum of Law made no reference to the stacking issue, but merely stated that the award of the arbitrators was "deficient in form,” and requested that the award to Alexander be reduced to $100,000.00. A hearing was scheduled for July 12, 1991.
 

 Trial Court's Findings of Fact, April 2, 1993 at 8-9.
 

 [11]
 

 . The trial court’s findings of fact 16(a), (b), (c) and (d) are supported by testimony and exhibits. (N.T. February 22, 1993 at 123-25) (Plaintiff's Exhibits 2, 3 and 18).
 

 [12]
 

 . Prudential states that the evidence for its argument is “set forth above.” (Prudential’s Brief at 30). However, Pennsylvania Rules of Appellate Procedure require:
 

 (d) Synopsis of Evidence. When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found.
 

 
 *124
 
 Pa.R.A.P. 2119(d). Prudential’s argument, therefore, does not conform to the Pennsylvania Rules of Appellate Procedure.
 

 [13]
 

 . The Terletskys also contend that Prudential’s bad faith was evidenced by Anna Pace’s interference with the arbitrators’ deliberation and the claims adjuster’s conflict of interest in handling both the Terletskys uninsured motorist claims and Michael Brown’s liability claim. However, we have previously stated that these claims are unsupported by the evidence. Thus, these claims cannot support an allegation of bad faith.
 

 [14]
 

 . Prudential also maintains that it is entitled to a non-suit because the Terletskys failed to prove bad faith by clear and convincing evidence. We disagree.
 

 A motion for compulsory non-suit allows a defendant to test the sufficiency of a plaintiff’s evidence.
 
 Storm v. Golden,
 
 371 Pa.Super. 368, 373, 538 A.2d 61, 63 (1988),
 
 appeal denied,
 
 524 Pa. 630, 574 A.2d 71 (1990) (citing
 
 Francioni
 
 v.
 
 Gibsonia Truck Corporation,
 
 472 Pa. 362, 372 A.2d 736 (1977)).
 

 A judgment of nonsuit is properly entered only if the factfinder, viewing the evidence and all reasonable inferences from the evidence in the light most favorable to the plaintiff, could not reasonably conclude that the elements of a cause of action have been established.
 
 Morena v. South Hills Health System,
 
 501 Pa. 634, 462 A.2d 680 (1983).
 

 American States Insurance Company v. Maryland Casualty Company, supra,
 
 427 Pa.Super. at 187, 628 A.2d at 889 (citing
 
 Morena v. South Hills Health System,
 
 501 Pa. 634, 462 A.2d 680 (1983)).
 

 Here, Prudential withheld partial payment of Alexander Terletsky’s arbitration award. Further, Prudential’s grounds for withholding the award were contrary to the advice of management. (Plaintiff’s Exhibit 3). Thus, Prudential's refusal to pay the entire award could be viewed as unfounded. Therefore, in viewing the evidence in the light most favorable to the Terletskys, we conclude that the Terletskys established the elements of a bad faith cause of action. Hence, the trial court did not err in failing to grant a non-suit.
 

 [15]
 

 . Additionally, Prudential asserts that the trial court erred in finding that Prudential’s position regarding the disputed payment took on the character of a vendetta. We agree.
 

 Prudential’s actions were reasonably based, thus, the Terletskys did not show that Prudential acted in bad faith. Therefore, we conclude that the evidence does not support a finding of a vendetta on the part of Prudential.
 

 [16]
 

 . Prudential also claims that the trial court’s verdict was contrary to law. However, Prudential has failed to develop its arguments, thus, this issue is waived pursuant to Pa.R.A.P. § 2119.
 
 See Dalton v. Dalton, supra.