

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-28-2005

# Kubrick v. Allstate Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1314

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kubrick v. Allstate Ins Co" (2005). *2005 Decisions.* Paper 1549.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1549

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-1314
_____

JOAN KUBRICK, ADMINISTRATRIX OF THE
ESTATE OF TIMOTHY KUBRICK, DECEASED;
WILLIAM A. KUBRICK,

Appellants

v.

ALLSTATE INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cv-06541)
District Judge:  Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit LAR 34.1(a)
January 27, 2005

Before:  SCIRICA, *Chief Judge*, RENDELL and FISHER, *Circuit Judges*.

(Filed   January 28, 2005 )
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Appellants Joan Kubrick, as Administratrix of the estate of her deceased son

Timothy, and her husband, William Kubrick (plaintiffs below), appeal from the grant of

summary judgment in favor of defendant Allstate Insurance Company ("Allstate") in this bad faith insurance action under Pennsylvania law.  We will affirm.

## I.  Standard of Review and Governing Law

This Court exercises plenary review of a district court's grant of summary judgment, and applies the same standard as the district court below – i.e., summary judgment is proper where no genuine issue of material fact exists, and where, viewing the facts in the light most favorable to the party against whom summary judgment was entered, the moving party is entitled to judgment as a matter of law.  *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004).  Pennsylvania law applies in this diversity action.

To make out a bad faith claim under Pennsylvania's bad faith insurance statute, 42 Pa.C.S.§ 8371, a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim.  *W.V. Realty Inc. v. Northern Ins. Co. of New York*, 334 F.3d 306, 312 (3d Cir. 2003).  *See also id.* at 311 ("bad faith" is not defined in the statute but has been identified by the courts of Pennsylvania as a "'frivolous or unfounded refusal to pay proceeds of a policy.'") (quoting *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) (internal quotation omitted)).  The "clear and convincing" standard requires evidence of bad faith "'so clear, direct, weighty and convincing' so as to enable the

[factfinder] to make its decision with 'a clear conviction.'" *Polselli v. Nationwide Mut.*

*Fire Ins. Co.*, 23 F.3d 474, 752 (3d Cir. 1994) (quoting, inter alia, *In re Estate of Fickert*,

337 A.2d 592, 594 (Pa. 1975)).

## II.  Discussion

The factual background of this action, which is lengthy and complicated, was

thoroughly discussed by the District Court and is known to the parties.  Accordingly, we

will focus in this opinion on the rationale for our decision.

Appellants point to three courses of conduct by Allstate, whether considered

separately or as a whole, from which a reasonable juror could conclude that Allstate

engaged in bad faith in its handling of the estate's claim for underinsured motorists'

coverage (UIM) under Mr. Kubrick's policy:  (1) the ten year lapse between Allstate's

initial search of its files in 1989 for Mr. Kubrick's "sign-down waiver" and its eventual

concession in 1999 that the document could not be located[1]; (2) the lengthy time lapse

between Appellants' claim for UIM coverage in 1989 and Allstate's investigation,

undertaken in 1997-1999, into the key factual coverage issues of whether the deceased

resided with his father so as to trigger coverage under Mr. Kubrick's policy and whether

---

[1]Pennsylvania law requires that bodily injury and UIM limits under a policy be equal unless the named insured submits a written request for lower UIM limits.  *See* 75 Pa.C.S.A §§ 1731, 1734.  Mr. Kubrick's policy provided for bodily injury limits of $300,000 (stacked on three vehicles for a total of $900,000); certain policy declarations suggested he had executed a "sign-down waiver" accepting UIM limits of $15,000 (for a stacked total of $45,000).  Allstate's failure to produce the "sign-down waiver" mandated that it recognize a UIM limit of $900,000, which it did in eventually settling the claim.

3

the deceased was driving at the time of the accident; and (3) <u>when</u> Allstate should have conducted its factual investigation into residency and the identity of the driver, which is an inquiry tied in this case to an alleged intervening change in Pennsylvania law regarding exhaustion of primary coverage before the claim for UIM against Allstate was ripe. Our independent review convinces us that Appellants did indeed fail to meet their heightened burden and that no reasonable juror could find that Allstate acted in bad faith on the existing summary judgment record.

The delay between assertion of the claim and its eventual settlement was extraordinarily lengthy, but must be viewed in light of the various and unique junctures that arose during the handling of this claim. Allstate's conduct with regard to the missing sign-down waiver, while perhaps not optimal in certain respects, must be viewed in light of the fact that Allstate reasonably believed in 1989, based on the then-existing state of Pennsylvania law, that Appellants' UIM claim was not ripe and indeed may never have ripened based on the litigation then pending, of which Allstate was aware, involving the primary and excess coverage available under other (non-Allstate) policies implicated by this accident. Allstate cannot be faulted for closing its file at that time without pursuing factual investigation into the residency and driver issues. Allstate's subsequent conduct in conducting the factual investigation cannot reasonably be faulted because the residency and driver issues represented potentially complete defenses to coverage, which Allstate was unquestionably entitled to pursue. As to the contention that Allstate should have

4

begun its investigation into these factual issues in either 1989 when the claim was filed, or 1995 when Pennsylvania law allegedly changed, we believe that no reasonable juror could find that Allstate acted unreasonably in closing the file in 1989, and not reopening its factual investigation before Appellants renewed their claim in November 1997.[2] As to any delay that ensued after the factual investigation was begun, the record indisputably reveals that such was attributable to both Allstate and Appellants, and thus, should not form the basis for a bad faith finding against Allstate. In addition, Appellants have failed to identify any dispute of material fact that would preclude summary judgment for Allstate.

Accordingly, we will affirm the entry of summary judgment for Allstate.

---

[2]It is unfortunate for both parties that the factual investigation into residency and the identity of the driver occurred so long after the accident. We are not unsympathetic to Appellants' concern that the trail of evidence was cold by the time Allstate undertook its investigation some twelve years after the accident. However, this situation was not created by Allstate alone, but in conjunction with the unique series of events that occurred in the handling of this claim, including the fact that Appellants did not assert their claim for UIM coverage by Allstate until four years after the accident.