NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1614
_____

NICOLE MOLL, Administrator of the Estate of Paul L. Robbins, III,
Appellant

v.

PRUCO LIFE INSURANCE COMPANY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(M.D. Pa. No. 1-14-cv-1040)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 4, 2016
_____

Before: JORDAN, GREENAWAY, JR., and RENDELL, *Circuit Judges*.

(Opinion Filed: May 18, 2017)
_____

OPINION*
_____

GREENAWAY, JR., *Circuit Judge*.

Nicole Moll, administrator of the estate of her stepfather, Paul L. Robbins, III,

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

seeks review of the District Court's decision granting summary judgment in favor of Pruco Life Insurance Company.[1] For the reasons set forth below, we will affirm the District Court's decision.

## I.  FACTS

On July 3, 2012, Robbins obtained a life insurance policy from Pruco, naming his three stepchildren (Moll, Larry Reinhardt, III, and Christine Reinhardt) and Moll's minor son as the beneficiaries of the $250,000 death benefit.  Under the terms of the policy, "[c]ontract premiums are due on the contract date and every 1 month after that date." (Supp. App. 5.)  The contract date was July 3, 2012, thus making payments due on the third of each month.  The contract also provided for a 31-day grace period, as required by 40 PA. STAT. AND CONS. STAT. ANN. § 510(b).  That is, "[i]f the premium has not been paid by its due date, the contract will stay in force during the grace period.  If the premium has not been paid when its grace period is over, the contract will end and have no value."  (Supp. App. 12.)

Robbins made the first payment of $42.53 via debit card on July 14, 2012.[2]  He did not make the payment due on August 3, 2012.  Instead, on August 20, 2012, Robbins submitted Pruco's "Request for Initial Premium (E-PAY) and/or to Establish Monthly

---

[1] Our review of the District Court's decision is plenary. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Tristani ex rel. Karnes v. Richman*, 652 F.3d 360, 366 (3d Cir. 2011)).

[2] While Robbins's bank statements showed his initial payment was deducted from his bank account on July 14, 2012, Pruco's records reflected a payment date of August 23, 2012, which was the date the payment was processed after the policy was fully underwritten.

Electronic Funds Transfer (EFT)" form (the "EFT Form") authorizing payments to be made monthly by automatic withdrawal from his bank account. The EFT Form asked the insured to select a date on which withdrawals would be made, stating that "[t]he monthly withdrawal date must be on or before the premium due date." (Supp. App. 71.) Despite this instruction, Robbins selected the 18th as his withdrawal date. By letter dated August 24, 2012, Pruco informed Robbins that the first withdrawal for the missed August payment would be made on September 10, 2012, and that the September payment would be withdrawn from his account on September 18, 2012. The record shows that all subsequent withdrawals were made on the 18th (or the next business day if the 18th fell on a weekend or holiday) of every month.

The automatic withdrawals continued until February 9, 2013 when Robbins called Pruco, expressing his desire to cancel his policy. During that call, the Pruco representative explained that the withdrawal for the February payment was already scheduled, the March withdrawal would be stopped, Robbins's coverage was in force until March 3, 2013, and the paperwork for cancelling the policy would be mailed to him. Robbins did not complete the cancellation paperwork, but he called Pruco again on March 11, 2013 to confirm the policy was cancelled. Since he had not completed the necessary cancellation form, the policy was still in effect. However, the representative explained that "if [he] would want to keep the policy, the quarterly premium [was] $125.22. This [was] due March 3, 2013. If [he] want[ed] to keep the policy, [he had] until April 3, 2013 to make the payment." (Supp. App. 30.)

Robbins never completed the cancellation paperwork, but he also never made

another payment on the policy, despite receiving written reminder notices dated February 20, 2013 and March 8, 2013. As a result, upon conclusion of the 31-day grace period, the policy lapsed on April 3, 2013. On April 8, 2013, Robbins died of an unexpected, massive heart attack.

## II. DISCUSSION[3]

Before the District Court, Moll asserted that Pruco breached an implied contractual provision created by Pennsylvania's Insurance Department Act of 1921, 40 PA. STAT. AND CONS. STAT. ANN. § 510(a), which provides that all life insurance policies "shall . . . contain[] . . . [a] provision that all premiums shall be payable in advance." Applying Pennsylvania's Statutory Construction Act,[4] the District Court concluded that "a permissive interpretation [of 'payable in advance'] best effectuates the legislature's intent." (App. 14.) That is, Moll's requested interpretation of "payable in advance" as requiring all payments to be made prior to the due date "would nullify the grace period [provision]." (*Id.*) As the District Court noted, such a strict interpretation would be in contravention of Pennsylvania's statutory construction principles.

Before us, Moll argues that the District Court erred by accepting Pruco's permissive interpretation of the statutory phrase "all premiums shall be payable in advance." Moll contends that "such an interpretation results in a law that serves no real

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C § 1291.

[4] Pennsylvania's Statutory Construction Act requires that "[e]very statute [] be construed, if possible, to give effect to all its provisions." 1 PA. STAT. AND CONS. STAT. ANN. § 1921(a).

4

purpose and, importantly, fails to meet the test of 'more favorable to the policyholder.'"

(Appellant's Br. 15 (quoting 40 PA. STAT. AND CONS. STAT. ANN. § 510).) Essentially,

Moll asserts that this phrase should instead be read as requiring all payments to be made

prior to their due date. As the District Court aptly concluded, however, this interpretation

would render 40 PA. STAT. AND CONS. STAT. ANN. § 510(b), which establishes a grace

period for payments, being superfluous and devoid of meaning. Contrary to Moll's

assertion, a permissive interpretation protects the public by providing flexibility in the

payment schedule.

> Moll also contends that the District Court misconstrued her argument. Her
>
> true position is that §510(a) exists to prevent precisely the scenario
> which occurred here in which the insurer relied on the earlier due
> date when calculating the statutorily-mandated grace period while at
> the same time regularly collecting the premium approximately two
> weeks beyond the original due date, a process which had the effect
> of a establishing a new, later due date.

(Appellant's Br. 14.)

Moll's argument is flawed in at least two respects. First, no support exists in the

statute, case law, or the contract for her assertion that Pruco's acceptance of late

payments pursuant to the EFT Form effectively established a new due date.[5] In fact,

accepting this argument would create an unmanageable payment system for insurance

---

[5] Moll claims that Pruco mandated when payments were made. To the contrary, Robbins established the payment schedule when he completed the EFT Form, and, contrary to the form's instruction, chose a payment date that was after the due date. Moreover, despite her arguments regarding the effect of the EFT Form, Moll concedes that she "did not and does not assert that the EFT Agreement constituted a modification of the Policy." (Appellant's Br. 19.) Only a modification of the policy could alter the payment due date.

premiums, which would effectively eliminate any certainty or clarity for both the insured and the insurance company. That is, accepting Moll's position would result in an ever-changing due date for premium payments since each late payment would adjust the due date for subsequent premiums.

Second, her claim that §510(a) exists to prevent the situation presented here ignores the grace period established in §510(b). As the District Court noted, Moll's suggested interpretation "would nullify the grace period" which would "violate[] the Statutory Construction Act's overarching command that a statute must be construed 'to give effect to all its provisions.'" (App. 14 (quoting 1 PA. STAT. AND CONS. STAT. ANN. § 1921(a)).) In fact, Moll concedes as much, stating that "such a position is too rigid and obviously not proper in light of the fact that the Insurance Act explicitly allows for payment of an overdue premium to be made after the due date by virtue of the grace period provided for in [§510(b)]." (Appellant's Br. 14.)

Moll's remaining arguments are variations on the theme that Robbins's payments should have been applied to the upcoming due date as opposed to the past due date, in accordance with the "payable in advance" provision. Moll comments that "Pruco inarguably did not make Robbins' [sic] premiums payable in advance." (Appellant's Br. 12.) Moll insists that the February 19, 2013 payment was for the March 3, 2013 due date, resulting in the next payment being due on April 3, 2013. As a result, the grace period would end on May 3, 2013, resulting in Robbins dying within the grace period. Statutory interpretation aside, this scenario defies common sense since it would result in Robbins having missed one month's payment during the brief existence of the policy. As the

6

record shows, Robbins never made a payment on or before the due date. [6] All of his payments, including the first one, were made after the due date.

Moll also argues that insurance premiums must be payable in advance to avoid confusion among insureds over the default date, and faults Pruco for never issuing default notices. As Pruco's representative, Angela Pompey, explained, "by us electronically withdrawing [the] payments, we know that every month [the] premium is going to be paid and the policy will never enter its grace [period]." (Supp. App. 119.) Therefore, so long as the automatic payment authorization was in effect, there was no need for Pruco to send default notices. When Robbins withdrew his automatic payment authorization on February 9, 2013, Pruco began sending reminder notices regarding the payment that was due on March 3, 2013. As noted above, the March 3, 2013 payment was never made. After the final payment for February 3, 2013 was made and the 31-day grace period

---

[6] Robbins's payment history for the Pruco policy is summarized as follows:

| Premium Due Date | Payment Date | Amount |
| --- | --- | --- |
| July 3, 2012 | July 14, 2012 | $42.53 (Visa debit) |
| Aug. 3, 2012 | Sept. 10, 2012 | $42.53 (EFT) |
| Sept. 3, 2012 | Sept. 18, 2012 | $42.53 (EFT) |
| Oct. 3, 2012 | Oct. 18, 2012 | $42.53 (EFT) |
| Nov. 3, 2012 | Nov. 19, 2012 | $42.53 (EFT) |
| Dec. 3, 2012 | Dec. 18, 2012 | $42.53 (EFT) |
| Jan. 3, 2013 | Jan. 19, 2013 | $42.53 (EFT) |
| Feb. 3, 2013 | Feb. 19, 2013 | $42.53 (EFT) |

(App. 7.) As Moll notes, "[i]f Pruco had applied Robbins' [sic] premiums as 'payable in advance' as required by law" or "[h]ad Pruco merely applied Robbins' [sic] premiums for the premium period ahead, . . . his death would have fallen within [the grace] period and coverage would be afforded." (Appellant's Br. 18.) This could not have happened given the number of payments Robbins made. Thus, the March 3, 2013 payment was never made, and the grace period ended on April 3, 2013.

7

expired, the policy lapsed.

Finally, Moll argues that "Pruco's actions in violating Pennsylvania law and its own EFT Agreement, improperly applying premiums, relying on its improper application of the premium to justify denying the claim and then forcing the beneficiaries to litigate the matter . . . provide sufficient evidence of bad faith." (Appellant's Br. 23.) The District Court evaluated this claim under Pennsylvania's insurance bad faith statute, 42 PA. STAT. AND CONS. STAT. ANN. § 8371, and correctly concluded that Pruco's actions did not amount to bad faith.

Pennsylvania courts broadly consider an insurer's bad faith to be "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (citing BLACK'S LAW DICTIONARY 139 (6th ed. 1990)). "'[T]o recover under a claim of bad faith,' the insured must show that the insurer 'did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.'" *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011), *as amended* (Dec. 9, 2011) (quoting *Terletsky*, 649 A.2d at 688). Here, Pruco's actions did not constitute bad faith because Pruco had a reasonable basis for denying benefits. As the District Court noted, Robbins knew of his "impending policy lapse" but "made no premium payments to prevent this lapse, [so] Pruco appropriately and timely declined to pay the death benefits." (App. 18.)

**III. CONCLUSION**

For the foregoing reasons, we will affirm the District Court's decision granting summary judgment in favor of Pruco.