**Casilda L. QUACIARI**

v.

**ALLSTATE INSURANCE COMPANY.**

No. CIV. A. 97–2028.

United States District Court,
E.D. Pennsylvania.

March 24, 1998.

Francis A. Ferrara, Media, PA, Francis J. Curran, Media, PA, for Plaintiff.

Eric M. Schweiker, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Plaintiff Casilda Quaciari ("plaintiff") brought this action against Allstate Insurance Company ("Allstate") under Pennsylvania's insurance bad faith statute, 42 Pa.C.S.A § 8371, based on Allstate's handling of her underinsured motorist ("UIM") claim after a December 1992 automobile accident. The heart of plaintiff's bad faith claim is that Allstate took conflicting positions regarding plaintiff's role in causing the accident: when

Allstate sought subrogation for the property damage claim submitted by plaintiff's father (the owner of the car and the policyholder), Allstate asserted that the other driver was solely responsible for the accident; when plaintiff submitted a UIM claim, Allstate took the position that plaintiff was responsible for the accident. At the close of discovery, defendant moved for summary judgment, asserting that, as a matter of law, Allstate's reversal of position could not be evidence of bad faith, and that plaintiff had otherwise failed to present clear and convincing evidence of bad faith in the handling of her claim. Plaintiff argued in response that Allstate's contradictory positions regarding plaintiff's responsibility for the accident, along with other actions taken by Allstate before the claim was eventually resolved, create genuine issues of material fact regarding the reasonableness of Allstate's conduct, sufficient to preclude summary judgment. On January 27, 1998, I heard oral argument on Allstate's motion.[1] After reviewing the record in this case, the arguments of the parties and the relevant case law, I conclude, for the reasons explained below, that plaintiff has failed to produce clear and convincing evidence from which a jury could reasonably conclude that Allstate lacked a reasonable basis for its actions in handling her UIM claim. I will therefore grant Allstate's motion for summary judgment.

## I. Background

The following facts are either not in dispute or are presented in the light most favorable to the plaintiff, the non-moving party.[2] On December 8, 1992, plaintiff Casilda Quaciari was driving a car owned by her father, Domenico Quaciari, when she was involved in an automobile accident with another car driven by Robert Wrease. Mr. Quaciari was insured by defendant Allstate, and Wrease was insured by Nationwide Insurance Company ("Nationwide"). Plaintiff was a named insured on her father's policy.

After the accident, Mr. Quaciari submitted a property damages claim to Allstate. On January 27, 1993, Allstate sent Mr. Quaciari a check for $3771.00, representing the value of Mr. Quaciari's claim less his $500 deductible. Allstate then pursued its subrogation rights against Nationwide, and the claim was submitted to arbitration. In contention papers filed as part of its subrogation claim, Allstate took the position that Nationwide's insured was solely responsible for the accident. (Pl.Ex. 3–5) The arbitration panel awarded $2974.40 to Allstate, representing 80 per cent of the claim. (Pl.Ex. 3–8) Allstate then reimbursed Mr. Quaciari $400, representing 80 per cent of his $500 deductible. (Pl.Ex. 3–9)

On September 26, 1994, plaintiff's counsel notified Allstate that he had received a verbal tender from Nationwide of Wrease's policy limits for personal injury claims ($15,000), and that plaintiff would be asserting an underinsured motorist ("UIM") claim against Allstate for personal injuries arising out of the accident. (Pl.Ex. 3–10) In a letter dated November 28, 1994, Allstate authorized plaintiff to settle with Nationwide for the policy limits and stated that it would arrange an independent medical examination of plaintiff after it received all outstanding medical documentation. (Pl.Ex. 3–14) Plaintiff's counsel forwarded medical records to Allstate on October 19, 1994, January 4, 1995 and March 21, 1995. (Pl.Ex. 3–12, 16, 19) On January 17, 1995, plaintiff demanded that the UIM claim be submitted to arbitration. (Pl.Ex. 3–17) On March 22, 1995, Allstate requested plaintiff's authorization to release "all records in this matter", including Nationwide's third party claim file. (Pl.Ex. 3–20) By letter dated May 1, 1995, plaintiff's counsel notified Allstate that plaintiff would provide any records requested, but that plaintiff was not required to sign a blanket authorization for medical records.(Pl.Ex. 3–22)

---

1. In plaintiff's response to the motion for summary judgment, plaintiff asserted, via affidavit, that more discovery was needed before the motion could be decided. At oral argument, counsel for both parties stipulated that the record was complete.

2. Allstate did not include a Statement of Undisputed Facts as part of its motion for summary judgment, nor did plaintiff submit a Counter-statement. The facts are taken from the parties' answers to requests for admissions and exhibits attached to the summary judgment pleadings.

Arbitration of the UIM claim was first scheduled for September 26, 1995. (Pl.Ex. 3–23) Plaintiff's statement under oath was taken on June 26, 1995. (Pl.Ex. 3–24) Plaintiff's independent medical examination was first scheduled for August 17, 1995, but was rescheduled for August 30, 1995 at plaintiff's request. (Pl.Ex. 3–28) On September 25, 1995, Allstate offered to settle plaintiff's UIM claim for $7500.00. The letter making the offer stated that the amount was based on "the facts surrounding the negligence of your client per se and damages elements to which your cleint [sic] is entitled." (Def.Ex. 31) Plaintiff rejected the offer, and did not make a written settlement demand. A diary entry of a phone conversation between plaintiff's counsel and an Allstate representative indicates that plaintiff's counsel said "he would not settle ... he was looking for at least in the range of six figures." (Def.Ex. F) On November 11, 1995, the UIM claim was heard by the arbitration panel. Counsel for Allstate made the following statement to the panel:

She entered the intersection on a yellow without looking either to the right or to the left. And that is negligent.

And that is the cause, I suggest to the panel, of this accident. She had a duty, at least on a yellow light, to look both ways and to assure that the intersection was clear.

She failed to look either way and as a result thereof this accident occurred.

Pl.Ex. 11.

The panel awarded plaintiff $55,000.00 on her UIM claim. On December 6, 1995, Allstate mailed a check in the amount of $55,000.00, along with a Receipt, Release and Trust Agreement, to plaintiff's counsel. (Pl.Ex. 3–33, 34) Plaintiff deposited the check and returned an executed Trust Agreement. Plaintiff did not sign the Release. (Pl.Ex. 3–35)

On February 21, 1997, plaintiff filed this action in the Court of Common Pleas for Philadelphia County, alleging, *inter alia*, that Allstate improperly refused to promptly settle the UIM claim after seeking 100 per cent subrogation on the property damage claim; that Allstate improperly forced plaintiff to arbitrate her UIM claim; that Allstate im-

properly delayed making an offer to plaintiff to settle her UIM claim; and that Allstate improperly conditioned payment of the arbitration award to plaintiff on her signing a release which was not required by the policy. The complaint sought compensatory damages, pre-judgment interest, punitive damages, and attorney fees and costs under 42 Pa.C.S.A. § 8371. Allstate removed the case to this court, asserting jurisdiction under 28 U.S.C. § 1332.

## II. Discussion

### A. *Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323.

Once the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party "may not rest upon the mere allegations or denials of the [nonmoving] party's pleading," *id.,* but must support its response with affidavits, depositions, answers to interrogatories, or admissions on file. *See Celotex,* 477 U.S. at 324; *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

To determine whether summary judgment is appropriate, I must determine whether any genuine issue of material fact exists. An issue is "material" only if the dispute "might

affect the outcome of the suit under the governing law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Thus, my inquiry at the summary judgment stage is only the "threshold inquiry of determining whether there is the need for a trial," that is, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250–52.

■ In cases brought under Pennsylvania's bad faith statute, 42 Pa.C.S.A. § 8371, a plaintiff must show, by clear and convincing evidence, that the insurer lacked a reasonable basis for its denial of a claim, and that it knew of, or recklessly disregarded, the lack of a reasonable basis. *Terletsky v. Prudential Property & Casualty Insurance Co.,* 437 Pa.Super. 108, 125, 649 A.2d 680 (1994).[3] The fact that plaintiff's burden at trial is higher than preponderance of the evidence means that plaintiff's burden in opposing summary judgment is higher as well. *Anderson,* 477 U.S. at 254 ("... in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."). Thus, although I am not to weigh the evidence, I must consider whether plaintiff has come forward with sufficient facts to meet her substantive evidentiary burden—in this case, clear and convincing—at trial.

### B. *Bad faith under 42 Pa.C.S.A. § 8371*

This case arises under 42 Pa.C.S.A. § 8371, which provides that:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:

(1) award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.[4]

As already noted, to succeed on a claim for bad faith under § 8371, the insured must establish the insurer's bad faith by clear and convincing evidence. *Polselli v. Nationwide Mutual Fire Insurance Company,* 23 F.3d 747, 750 (3d Cir.1994), citing *Cowden v. Aetna Casualty and Surety Co.,* 389 Pa. 459, 134 A.2d 223 (1957). Bad faith is defined as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Terletsky,* 437 Pa.Super. at 125, 649 A.2d 680. A plaintiff must prove that an insurer did not have a reasonable basis for denying a claim, and that the insurer knew or recklessly disregarded the lack of reasonable basis. *Klinger v. State Farm,* 115 F.3d 230 (3d Cir.1997), citing *Terletsky.*

Although plaintiff asserted several grounds for her bad faith claim in her complaint, her brief in opposition to the motion for summary judgment, as well as oral argument, were

---

**3.** Conversely, although defendant's burden at summary judgment is to show a lack of sufficient evidence to go to a jury, since plaintiff's burden is to show a lack of reasonable basis for defendant's handling of the claim, defendant may also prevail at summary judgment by affirmatively demonstrating a reasonable basis for its actions.

Bad faith cases are commonly decided at the summary judgment stage, with the court determining, as a matter of law, that the insurer had a reasonable basis for its actions. *See, e.g., Jung v. Nationwide,* 949 F.Supp. 353 (E.D.Pa.1997); *De-*

*arry v. Liberty Mutual,* 1997 WL 129099 (E.D.Pa.); *Leo v. State Farm,* 939 F.Supp. 1186 (E.D.Pa.1996).

**4.** Although § 8371 refers to a court, plaintiff has a right to a jury trial on the issue of punitive damages, if the action is heard in federal court. *Younis Bros. & Co., Inc. v. Cigna Worldwide Insurance Co.,* 882 F.Supp. 1468 (E.D.Pa.1994). Claims for pre-judgment interest and attorney fees, on the other hand, do not implicate a right to trial by jury. *Id.*

addressed almost exclusively to the issue of Allstate's reversal of position.[5] Plaintiff argued that once Allstate took a position as to how the accident occurred, it was bad faith for it later to adopt a conflicting position.[6]

Defendant's undisputed evidence is the following: that plaintiff reported no wage loss; that plaintiff's initial medical records indicated that her injuries were resolved; that a panel of arbitrators found plaintiff 20 per cent responsible for the accident; that plaintiff demanded in January 1995 that the claim be submitted to arbitration, before Allstate had received all of plaintiff's medical records; that plaintiff was out of the country for several months in 1994 and in 1995, necessitating the postponement of her IME and sworn statements; that plaintiff did not submit full medical records to Allstate until March 1995; that Allstate made an offer to plaintiff within two weeks of receiving her IME report and sworn statement, and acknowledged that its offer was based in part on plaintiff's role in causing the accident; that plaintiff never made a settlement demand of less than "six figures", that Allstate did not prevent plaintiff from cashing the check even though plaintiff refused to sign the release; that less than eleven months elapsed from the time that plaintiff demanded arbitration until plaintiff cashed the check.

The evidence that plaintiff has produced is the following: that Allstate argued to the arbitration panel hearing the subrogation claim that plaintiff was without fault in causing the accident; that the panel concluded that the other driver was 80 per cent responsible for the accident[7]; that plaintiff provided some medical records to Allstate as early as October 1994, and all records by March 1995; that the IME ordered by Allstate did not dispute the findings of plaintiff's doctors; that Allstate made its first offer of settlement in September 1995; that its offer was $47,500 dollars less than what was eventually awarded by the arbitrator; that Allstate argued to the panel arbitrating the UIM claim that plaintiff was entirely at fault for the accident; that Allstate attempted, unsuccessfully, to have plaintiff sign a general release (which was not required by the policy) as a condition of receiving the check.

█ Considering the evidence in the light most favorable to plaintiff, and considering plaintiff's heightened evidentiary burden at trial, I conclude that she has failed to adduce sufficient evidence from which a reasonable

5. At oral argument, the following exchange took place:

THE COURT: Let me just ask you a question, Mr. Curran. This [Allstate's reversal of position] is the sole issue basically. the other allegations of bad faith, I assume that you're not seriously contending as a basis of bad faith.

. . . . .

MR. CURRAN: But for this part of the claim, Your Honor, I don't think we would have brought this case.

Transcript of oral argument, January 27, 1998, at 27–28.

Plaintiff's counsel went on to argue that the evidence in support of the other allegations of bad faith, i.e., the delay in making an offer and the attempt to have plaintiff sign a general release, was sufficient to preclude summary judgment.

6. Plaintiff did not argue that Allstate was judicially estopped from contesting its liability at the UIM arbitration. The doctrine of judicial estoppel "precludes a party from assuming a position in a legal proceeding that contradicts or is inconsistent with a previously asserted position." Delgrosso v. Spang and Co., 903 F.2d 234, 241 (3d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 428, 112 L.Ed.2d 412 (1990). The court makes a two-part inquiry—1) whether the party's present position is inconsistent with a position previously asserted, and 2) whether the party asserted either or both inconsistent positions in bad faith. Ryan Operations G.P. v. Santiam–Midwest Lumber Co., 81 F.3d 355, 361 (3d Cir.1996). A party need not obtain a benefit from the inconsistency in order for judicial estoppel to apply, but application of the rule is especially appropriate where the party being estopped benefitted from its original position. Koppers v. Certain Underwriters at Lloyds, 1998 WL 81635 *3 (W.D.Pa.1998), citing Ryan. Since the terms of the Inter–Company Arbitration Agreement permit the parties to take inconsistent positions in arbitrating different aspects of a case, the doctrine appears to have no relevance to deciding the bad faith claim at issue, even if plaintiff had presented evidence showing that the arbitrations should be considered "legal proceedings".

7. The arbitration decision is a one-page document. Under the heading "Findings" is the statement: "Applicant sustained burden of proof." Under "award amount" is the figure $2974.40; under that line are the words "award percentage: 80%". Exhibit 3, Plaintiff's Reply to the Defendant's Motion for Summary Judgment.

jury could conclude that Allstate lacked a reasonable basis for its handling of her UIM claim. As discussed below, Allstate's reversal of position, on its own, is insufficient to establish bad faith. The nature of plaintiff's injuries, the inconclusiveness of both the police report and the arbitration award on the issue of liability, all provided a reasonable basis for Allstate to require further information, in the form of medical reports, an IME and a sworn statement, before it could place a value on plaintiff's claim. The time delay in resolving the claim seems equally attributable to both plaintiff and defendant; even if all delay were attributable to Allstate, it would not, without more, be sufficient to establish bad faith.[8]

■ Nor is the discrepancy between Allstate's offer and the arbitration award evidence of bad faith, as plaintiff has offered no evidence tending to show that she made a demand, or that she was willing to settle, for a figure close to the arbitration award, or indeed for any figure, before the arbitration. The only evidence of plaintiff's demand was a notation by Allstate's adjuster that plaintiff was demanding "six figures". As Allstate points out, "six figures" is as far removed from the ultimate award of $55,000 as is Allstate's offer of $7500. Finally, plaintiff has not offered any evidence that she was harmed by Allstate's proffer of a release along with the award check; plaintiff cashed the check and did not sign the release. I therefore conclude that Allstate's handling of plaintiff's UIM claim was reasonable as a matter of law.

The issue of Allstate's reversal of position regarding plaintiffs' responsibility for the accident is not dispositive of the bad faith issue. In its brief in support of its motion for summary judgment, and at oral argument, Allstate contended that plaintiff's estoppel argument (i.e., that Allstate was estopped from ascribing fault to plaintiff after it took

the position that the other driver was at fault in the subrogation proceeding) is legally wrong, because the Nationwide Inter–Company Arbitration Agreement governing arbitrations of insurance claims provides that a given arbitration decision is

> not res judicata with respect to the same or similar issues in companion cases or any other claim between the arbitrating companies. It is conclusive only of the controversy of the claim submitted to the panel and has no legal or moral effect on any other claim or suit arising out of the same transaction or occurrence.

Def.Mem. at 7–8, quoting Rule 15 of Arbitration Forum, Inc.'s Nationwide Inter–Company Arbitration Agreement, Rules and Regulations.

Allstate relies on this language for its position that it was legally proper and reasonable for it to contest liability at the UIM arbitration. *See also, Muse v. Cermak,* 428 Pa.Super. 199, 630 A.2d 891, 893 (1993)(relying on similar language in an arbitration agreement to permit a party to relitigate liability).

Plaintiff argued in response that, since a subrogee possesses no greater rights than its insured, and stands in their shoes, then Allstate must have been advancing plaintiff's interest when it sought subrogation. Since the subrogation arbitration produced a finding of 80% liability of the other driver, Allstate must have been advancing its own interest, not plaintiff's, when it later contested liability on the UIM claim. (Pl.Mem. at 8) Plaintiff argued that whether or not the subrogation decision is *res judicata* in a subsequent proceeding is irrelevant to the issue of whether Allstate's conduct amounted to bad faith.

Both parties misapprehend the significance of the subrogation arbitration to the resolution of this bad faith claim. With or without Allstate's change in position, and with or

---

8. It was plaintiff, not Allstate, who demanded that the claim be submitted to arbitration; the demand was made before plaintiff had given all relevant medical records to Allstate. Additionally, there is no evidence in the record regarding plaintiff's out-of pocket expenses during the pendency of her UIM claim, and therefore no basis on which to assess the reasonableness of All-

state's conduct in requiring an IME and a sworn statement before making an offer. *See, e.g., Leo,* 939 F.Supp. at 1191 (insurer's requiring an IME and sworn statement was reasonable as a matter of law where record indicated that plaintiff had been fully compensated for out-of pocket losses before UIM claim was filed).

without the language in the Inter–Company Arbitration Agreement, the only relevant issue is whether Allstate had a reasonable basis for its actions, and if it did not, whether it knew of or recklessly disregarded its lack of reasonable basis.

■ Plaintiff's argument fails for several reasons. As an initial matter, plaintiff has not come forward with evidence of harm flowing from Allstate's change in position.[9] Plaintiff seems to argue that it was the act of challenging plaintiff at the UIM arbitration, i.e., cross-examining her about whether she looked both ways before entering the intersection on a yellow light, and arguing to the panel that plaintiff was responsible, which forms the basis for her bad faith claim. Plaintiff, however, has offered no evidence tending to show that the amount awarded by the arbitrators would have been greater but for Allstate's conduct.

■ Nor can plaintiff argue that Allstate is guilty of bad faith simply for contesting the UIM claim, or for taking it to arbitration. Presumably, the arbitration provision is in the policy precisely because insurance companies and their insureds often cannot agree on liability and/or damages in a UIM claim. The language of the Inter–Company Arbitration Agreement merely recognizes the reality that in resolving different claims arising out of a single accident, the parties may have different facts at their disposal, and may appropriately be advancing different interests. The language of the agreement, coupled with its interpretation in *Muse*, also provided Allstate with the reasonable belief that it was acting permissibly in taking a different position at the UIM arbitration. *See, e.g., Terletsky*, 437 Pa.Super. at 128–9, 649 A.2d 680(not bad faith to challenge stacking of policies since law on stacking was unclear at the time).

Finally, to the extent that plaintiff is arguing a breach of Allstate's fiduciary duty to plaintiff, Allstate's fiduciary duty in the sub-

rogation proceeding was to plaintiff's father, the policyholder and the owner of the damaged car, not to plaintiff.[10] Plaintiff did not produce evidence that Allstate was under an obligation to bring a subrogation action. *See, e.g., Dearry v. Liberty Mutual*, 1997 WL 129099 (E.D.Pa.) (summary judgment in favor of insurer on claim that insurer should not have settled for 80% subrogation of plaintiff's property damage claim, because insurer had no obligation to pursue subrogation). The policy covering plaintiff and plaintiff's father was not made part of the record.

On the other hand, defendant's argument also fails because the fact that it was free, under the terms of the Inter–Company Arbitration Agreement, to re-litigate the issue of plaintiff's fault, does not mean that under the cumulative facts of a particular case, it could not be bad faith for it to do so. For instance, if Allstate had sufficient medical evidence of plaintiff's injuries at the time she filed her UIM claim, along with an arbitration finding of 0 per cent fault, it may very well have been bad faith for it to fail to make a prompt offer of settlement, and to assert that plaintiff was 100 per cent at fault.

Based on the evidence offered, however, plaintiff has failed to make a showing of bad faith sufficient to preclude summary judgment. *Compare, Klinger v. State Farm*, 115 F.3d 230 (3d Cir.1997)(affirming finding of bad faith where insurer's attorney failed to communicate with insurer re status of case and no offer was made before arbitration). As stated earlier, I conclude that Allstate's handling of plaintiff's UIM claim was reasonable as a matter of law.

III. Order

**AND NOW,** this day of March 1998, upon consideration of defendant Allstate's motion for summary judgment and memorandum (docket # 11, 12), plaintiff's response (docket # 14), defendant's reply (docket # 15), and after oral argument, **IT IS ORDERED**

9. Harm is an essential element of a bad faith claim. *See, e.g., Builders Square, Inc. v. Saraco*, 1997 WL 3205 *7(E.D.Pa.).

10. On these facts I would not, however, reach a different result if the person asserting the proper-

ty damage claim and the UIM claim were the same, because the subrogation arbitration does not meet the test for issue or claim preclusion. *Muse.*

**THAT** defendant's motion is **GRANTED.** Judgment is entered in favor of defendant Allstate. Each side is to bear its own costs.