## Wiedinmyer v. Harleysville Mutual Insurance Co.

C.P. of Montgomery County, no. 94-19450.

*Patrick McMenamin Jr.,* for plaintiff.
*James C. Haggerty* and *Scott J. Tredwell,* for defendant.

NICHOLAS, *J.,* August 5, 1999—This opinion is necessitated by plaintiff's appeal to the Superior Court of Pennsylvania from our order dated June 4, 1999, granting defendant's motion for summary judgment.

Plaintiff, Karen Wiedinmyer, is the administratrix of the estate of Micah C. Wiedinmyer, who died on May 29, 1993, as the result of injuries sustained in a two-vehicle automobile accident which also claimed the lives of four other people. Defendant, Harleysville Mutual Insurance Company, is an insurance carrier which issued a policy for automobile insurance to one Benjamin Griscom which was in effect at the time of the accident

and which provided underinsured motorist coverage in accordance with 75 Pa.C.S. §1701 et seq.[1]

Plaintiff filed her complaint in this action on October 4, 1994. In her complaint, plaintiff seeks damages for defendant's alleged bad faith handling of an underinsured motorist claim made by plaintiff upon the insurance policy issued to Mr. Griscom. Plaintiff alleges that demand was made upon defendant for payment on January 13, 1994, and that defendant failed to make a timely payment, despite knowledge of the claim's legitimacy. Plaintiff further alleges that defendant acted in bad faith by failing to reasonably investigate and process plaintiff's claim and by not attempting to negotiate an equitable settlement of plaintiff's claim.[2]

On February 14, 1995, defendant filed its motion for summary judgment, contending that, at most, plaintiff's complaint alleges that defendant was negligent in handling plaintiff's underinsured motorist claim and that mere negligence by an insurer is not actionable pursuant to 42 Pa.C.S. §8371. Defendant contends that any apparent delay in processing plaintiff's claim upon the insurance policy issued to Mr. Griscom is readily explained by the fact that plaintiff was not the only party making claim to the proceeds of this policy. Mr. Griscom's policy contained a single limit of $300,000 in underinsured motorist benefits. In addition to plaintiff's claim upon

---

1. Although it is not explicitly stated anywhere in the record, Mr. Griscom (not a party to the instant action) was apparently a passenger or driver involved in the accident which took the life of Mr. Wiedinmyer.

2. In her complaint, plaintiff styles this action as arising under 42 Pa.C.S. §2307(7) and (9). No such statute exists. It seems apparent that plaintiff intended to bring this action pursuant to 42 Pa.C.S. §8371.

this policy, a claim was also made by the estate of Sean Rocks, another individual killed in the accident. Defendant contends that these rival claims required investigation and negotiation and that neither claim could be settled without taking into account the rights of the other claimant. Defendant avers—and plaintiff admits—that payment ultimately was made upon Mr. Griscom's policy, with plaintiff and the estate of Sean Rocks receiving equal $150,000 shares of the $300,000 policy benefits.

On September 11, 1996, defendant's motion for summary judgment came on for oral argument before the undersigned. By order dated September 13, 1996, disposition of defendant's motion was deferred pending further development of the record. Upon agreement of the parties, counsel were directed to submit to the court, within 10 days, an agreed stipulation of facts to assist the court in making its determination. The court's order further provided that:

"In the event either party believes that even after the stipulated facts, depositions may be required to further develop the record sufficiently for the court to rule on the defendant's motion for summary judgment, such party is to advise the court of the nature of the disputed fact and the identity of the person or persons to be deposed with respect thereto."

Following our order of September 13, 1996, this case engendered no further docket activity until October 29, 1998, when an active status certification was filed in response to a notice to teminate issued pursuant to Montgomery County Local Rule 406.

On March 11, 1999, the parties filed a sipulation of facts, consisting of correspondence related to plaintiff's claim. Neither party made any request to conduct depo-

sitions to further develop the record as provided for in our order dated September 13, 1996.

Defendant's motion for summary judgment came on for oral argument before the undersigned for the second time on May 4, 1999. Upon careful consideration of the motion, plaintiff's response thereto, the briefs of counsel, and the stipulation of facts, the court granted defendant's motion for summary judgment by order dated June 4, 1999.

Plaintiff filed her notice of appeal to the Superior Court of Pennsylvania on June 28, 1999. By order dated July 9, 1999, plaintiff was directed to provide this court with a concise statement of the matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Plaintiff's concise statement was received on July 22, 1999.

In her concise statement, plaintiff contends:

"(1) The trial court erred in its determination that no genuine issue of any material fact existed, as to a necessary element of the cause of action under 42 Pa.C.S. §8371.

"(2) The trial court erred in its determination that, as a matter of law, no reasonable jury could find that the stipulation of facts establishes, by clear and convincing evidence, bad faith pursuant to 42 Pa.C.S. §8371, with regard to plaintiff's underinsured motorist claim."

We see no merit to plaintiff's contentions of error.

We note first the standards governing an award of summary judgment. Pa.R.C.P. 1035.2 provides that summary judgment may be granted:

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

Discovery in the instant case was completed upon the filing with this court of the parties' stipulation of facts without any request for further depositions. Our review of this stipulation convinced the court that plaintiff had failed, as a matter of law, to offer sufficient evidence for a reasonable jury to conclude that defendant acted in bad faith with regard to its handling of plaintiff's underinsured motorist claim. In reaching this conclusion, this court did not make any factual determination as to the truth of plaintiff's allegations. This court, rather, made a legal determination that the record reveals no genuine issue of material fact as to which a factual determination *need* be made. *Boring v. Erie Insurance Group,* 434 Pa. Super. 40, 641 A.2d 1189 (1994). While the party requesting that summary judgment be entered in its favor has the initial burden of demonstrating that no genuine issue of material fact exists, *First Wisconsin Trust Co. v. Strausser,* 439 Pa. Super. 192, 653 A.2d 688 (1995), the non-moving party may not avoid summary judgment where it produces no evidence to support an issue on which it bears the burden of proof. *Ertel v. Patriot-News Co.,* 544 Pa. 93, 674 A.2d 1038 (1996), *cert. denied,* 117 S.Ct. 512, 136 L.Ed.2d 401.

Plaintiff brought this action pursuant to 42 Pa.C.S. §8371, which provides:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward

the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

While 42 Pa.C.S. §8371 does not define the term "bad faith," our Superior Court has identified bad faith on the part of an insurer as: "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.,* good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith." *Romano v. Nationwide Mutual Fire Insurance Co.,* 435 Pa. Super. 545, 553, 646 A.2d 1228, 1232 (1994) (citing Black's Law Dictionary, 139, 6th ed. 1990).

Where an insured accuses an insurer of bad faith in its handling of a claim, the burden is on the insured to demonstrate that the insurer had no reasonable basis for its actions and that the insurer either knew or recklessly disregarded its lack of a reasonable basis for handling the insured's claim as it did. See *e.g., MGA Insurance Co. v. Bakos,* 699 A.2d 751, 754 (Pa. Super. 1997); *Terletsky v. Prudential Property and Casualty Insurance Co.,* 437 Pa. Super. 108, 649 A.2d 680 (1994), *appeal denied,* 540 Pa. 641, 659 A.2d 560 (1995). Further, the evidence offered to prove such bad faith on the part of an insurer must be "clear and convincing." See *e.g., O'Donnell v.*

*Allstate Insurance Company,* 1999 Pa. Super. 161; *MGA Insurance Co., supra; Quaciari v. Allstate Insurance Co.,* 998 F. Supp. 578 (E.D. Pa. 1998). Bad faith on the part of an insurer may not be "merely insinuated." See *e.g., Terletsky, supra* at 125, 649 A.2d at 688. Where a plaintiff fails to offer clear and convincing evidence of bad faith, plaintiff's claim is properly withheld from the jury. See *e.g., Quaciari, supra* and *O'Donnell, supra,* to wit:

"As a matter of law, the evidence presented by appellant of Allstate's conduct during the course of litigation does not constitute bad faith and, therefore, such evidence was properly excluded from the jury's consideration." *O'Donnell, supra,* 1999 Pa. Super. 161, 6.

The *O'Donnell* court cited with approval *Jung v. Nationwide Mutual Fire Insurance Co.,* 949 F. Supp. 353, 360 (E.D. Pa. 1997), where the court, in granting plaintiff's motion for summary judgment, held that, in the absence of evidence revealing a dishonest purpose, it is not bad faith for an insurer to aggressively investigate an insured's claim in order to protect its own interests.

Thus, summary judgment is properly entered against a plaintiff where that plaintiff alleges bad faith on the part of its insurer but fails to present sufficient evidence for a reasonable jury to find by clear and convincing evidence that plaintiff's insurer acted in bad faith. *O'Donnell, supra,* 1999 Pa. Super. 161, 9; *Quaciari, supra; Jung, supra.*

In the instant case, plaintiff's complaint and her briefs in opposition to defendant's motion for summary judgment insinuate bad faith on the part of defendant, but nowhere in the record does plaintiff offer clear and convincing evidence that defendant acted in bad faith. No-

where in the stipulation of facts—or elsewhere in the record—is there evidence that defendant handled plaintiff's claim with dishonest purpose or ill will. Not only does the stipulation of facts fail to offer evidence that defendant had no reasonable basis for the manner in which it handled plaintiff's claim, the stipulation in fact supports defendant's contention that the apparent delays in processing plaintiff's claim resulted largely from the need to collect documentation from multiple parties and the need to coordinate settlement between two parties making claims upon the same single limit policy. While these delays might *arguably* be at least partially attributable to sloth on the part of defendant such as might constitute negligence, there is in the record no evidence whatever of bad faith on defendant's part.

The accident which took the life of Mr. Wiedinmyer occurred on May 29, 1993. Plaintiff first notified defendant of her claim on August 26, 1993, when plaintiff's then counsel, Stewart B. Liebman, Esquire, informed Casualty Research Service Inc. that he represented the estate of Micah Wiedinmyer "in connection with claims arising from the accident."

Defendant responded to Mr. Liebman's letter on November 9, 1993, apologizing for the delay (which apparently was not complained of by plaintiff), noting "a file like this seems to require many reports." Defendant asked for information concerning the nature of plaintiff's claim, the estate's legal representation, and other insurance policies which might be at issue. Defendant also requested "all the material usual with a death claim." Also on November 9, 1993, defendant wrote to Kenneth E. Calloway, Esquire, counsel for the estate of Sean Rocks, asking for information on the status of his client's claim.

The stipulation of facts provides no indication that plaintiff provided any documentation in immediate re-

sponse to defendant's letter of November 9, 1993. On November 12, 1993, plaintiff's counsel wrote to defendant, confirming representation of the Wiedinmyer estate by Mr. Liebman's law firm and requesting information concerning the amounts available under Mr. Griscom's insurance policy.

Defendant responded to plaintiff's request on January 4, 1994, apologizing for the delay and informing plaintiff that there was a $300,000 limit on Mr. Griscom's policy. Defendant asked again for information concerning whether plaintiff's decedent had any other insurance coverage which might be at issue. Defendant also requested a specific list of documentation required to process the claim. Also on January 4, 1994, defendant wrote to Mr. Calloway, requesting similar information and documentation from the estate of Sean Rocks.

On January 13, 1994, plaintiff presented defendant with a formal demand for payment, detailing claims the amount of which would far exceed the $300,000 available under Mr. Griscom's policy. Plaintiff's letter stated that the documentation requested by defendant was enclosed.

On February 1, 1994, plaintiff again wrote to defendant, complaining that defendant had not yet reviewed the documentation forwarded. Defendant responded on February 10, 1994, informing plaintiff that defendant had not forwarded all of the requested documentation, including the decedent's autopsy report and a letter from Prudential Insurance Company "tendering their bodily injury limits."[3] Defendant also informed plaintiff that the estate of Sean Rocks was making a claim upon Mr.

3. The Prudential policy at issue apparently provided coverage to Christopher Marcucci, the alleged underlying tort-feasor in the May 29, 1993 accident.

Griscom's policy and that defendant could not settle one claim without addressing the other. Defendant informed plaintiff that documentation had been requested from counsel for Mr. Rock's estate, but that Mr. Calloway had not yet responded. Defendant suggested that if plaintiff was anxious to expedite settlement, plaintiff's counsel should contact Mr. Calloway directly since the two estates would ultimately have to "split" the proceeds of Mr. Griscom's underinsured motorist policy.

There is no indication in the record that plaintiff's counsel at this point availed himself of the suggestion that he contact Mr. Calloway.

On February 15, 1994, Mr. Calloway wrote to defendant, stating that he was enclosing requested documentation and expressing an interest in resolving the claim of the estate of Sean Rocks "without the commencement of litigation." Defendant's adjuster responded to Mr. Calloway's letter on March 7, 1994, stating that Mr. Calloway had not sent her most of the documentation she had requested and had indeed sent her the autopsy report not for Sean Rocks, but for Micah Wiedinmyer. Defendant informed Mr. Calloway that settlement could not be arranged prior to receipt of the required documentation, which included a correct autopsy report, an affidavit of no insurance, and information concerning other insurance policies which might provide coverage.

Also on March 7, 1994, plaintiff's counsel wrote to defendant, stating that he was enclosing a copy of Micah Wiedinmyer's autopsy report and a letter from Prudential Insurance Company "tendering their bodily injury limits." That same date, defendant contacted Prudential for information regarding its subrogation interest. Plaintiff's counsel wrote again to defendant on March

24, 1994, stating that he was "once again" enclosing correspondence from Prudential "verifying the Marcucci limits of liability." Plaintiff's counsel stated that he had requested from the Prudential adjuster a copy of "the actual dec sheet" which he would forward to defendant as soon as he had it. On April 1, 1994, a casualty analyst for Prudential wrote directly to defendant, stating that she did not have most of the information defendant wanted.

On April 6, 1994, plaintiff's counsel wrote to defendant to announce that he was demanding arbitration of plaintiff's claim. Counsel announced his choice for an arbitrator and requested that defendant do the same. Counsel's letter states that he encloses "a copy of verification received from Prudential Insurance Company regarding the Marcucci's insurance coverage." Someone, apparently a representative of defendant, has handwritten upon this letter what appears to be: "not a dec sheet but printout."

Defendant took no immediate action to appoint an arbitrator and, on July 21, 1994, plaintiff's counsel wrote defendant's counsel to inform him that plaintiff would file a petition to appoint arbitrator because "Although you have indicated that you are attempting to obtain authority from Harleysville to resolve this matter, no offer of settlement has been made." Plaintiff formally filed a petition to appoint arbitrator on July 28, 1994. Defendant appointed its arbitrator on August 22, 1994. A neutral arbitrator was selected on September 30, 1994, and a hearing was scheduled for January 19, 1995.

On November 3, 1994, Mr. Calloway wrote to defendant, expressing annoyance that he had not been contacted by defendant since March 7, 1994, when defen-

dant requested further documentation and information regarding the claim of the estate of Sean Rocks. Mr. Calloway stated that he provided documentation on April 7, 1994, June 17, 1994, and July 8, 1994 but had received no response. Mr. Calloway stated that he had recently received a phone call from plaintiff's counsel and that he was interested in resolving the matter by "dividing the $300,000 policy equally."

On December 1, 1994, the parties formally agreed that the $300,000 Griscom policy would be divided equally between the estate of Sean Rocks and plaintiff.

We find in the above facts no clear and convincing evidence that defendant acted in bad faith in handling plaintiff's claim. Indeed, we find no evidence of bad faith at all. Although the accident claiming the life of Mr. Wiedinmyer took place on May 29, 1993, plaintiff did not make formal demand for payment of her claim until January 13, 1994. Plaintiff received payment on her claim on December 1, 1994, following the agreed settlement with defendant and the estate of Sean Rocks. Although this delay of some 10 1/2 months was doubtless frustrating to plaintiff, it certainly is not per se evidence of bad faith. See *e.g., Quaciari, supra,* 998 F. Supp. at 583. In order for plaintiff to recover upon a bad faith claim against defendant, the evidence must demonstrate that this delay is attributable to defendant, that defendant had no reasonable basis for the actions it undertook which resulted in the delay, and that defendant knew or recklessly disregarded the fact that it had no reasonable basis to delay payment. *Quaciari, supra; Terletsky, supra.*

In the instant case, the record establishes that the entire period of delay cannot be attributed solely to defendant. Although demand for payment was made on Janu-

ary 13, 1994, the stipulation of facts indicates that defendant made repeated requests to plaintiff's counsel for information and documentation in order to process the claim. For example, the autopsy report for Mr. Wiedinmyer, first specifically requested on January 4, 1994, was not provided until March 7, 1994. The record indicates that as late as April 1994, defendant was still attempting to obtain information from plaintiff and Prudential regarding the possible existence of other insurance policies which might provide coverage for the parties to the accident. The stipulation of facts further indicates that Mr. Calloway was still providing the documentation required by defendant from the estate of Sean Rocks as late as July 8, 1994 (see Mr. Calloway's letter of November 3, 1994).

The record further fails to indicate that defendant had no reasonable basis for its handling of plaintiff's claim. The accident which killed plaintiff's decedent also claimed four other lives. Two of the estates of those killed in the accident (Mr. Wiedinmyer's estate and the estate of Sean Rocks) were making claim to the proceeds from Mr. Griscom's policy of insurance. Both estates were making claims for amounts which individually would have exhausted that policy's $300,000 limit for underinsured motorist coverage. Defendant believed that it could not simply pay out these benefits on one claim and ignore the other. Defendant notified plaintiff of this situation as early as February 10, 1994.

There appears in the record no evidence of ill will or dishonest purpose in defendant's conclusion that payment could not be made upon plaintiff's claim without also arranging settlement of the Rocks claim. Again, defendant had a single insurance policy with a $300,000

limit, with two parties equally entitled to this policy's benefits, each making individual claims for amounts greater than the entire proceeds of the policy.

Plaintiff has presented the court with no persuasive authority indicating that defendant was incorrect in interpreting the law as preventing defendant from paying the claim of one of the estates without also arranging settlement with the other. In any event, it is not necessary that defendant have been legally correct in its judgment in this matter in order for this court to determine that plaintiff has failed to present sufficient evidence for a jury to conclude that defendant acted in bad faith. Bad faith cannot be found where the insurer's actions are in accordance with a reasonable, even if incorrect, interpretation of the law. *J.H. France Refractories Co. v. Allstate Insurance Co.*, 534 Pa. 29, 44, 626 A.2d 502, 510 (1993); *Jung, supra; Terletsky, supra.* Bad judgment alone does not constitute bad faith.

In the instant case, plaintiff has offered no evidence indicating that defendant's conclusion that it needed to arrange settlement with *both* estates was in any manner unreasonable or motivated by ill will. Defendant certainly did not attempt to hide its position on this matter from plaintiff. Defendant indeed suggested that plaintiff's counsel directly contact counsel for the estate of Sean Rocks in an attempt to expedite a settlement. Defendant stated in its letter of February 10, 1994 that the two estates would ultimately have to negotiate a "split" of the policy proceeds and, indeed, this is eventually what transpired, albeit more than nine months later. Given that the two estates apparently were able to quickly arrange an equal split of the policy proceeds shortly after plaintiff's counsel *did* contact counsel for the estate of

Sean Rocks (see Mr. Calloway's letter of November 3, 1994), it appears unfortunate that counsel for the two estates did not enter into direct negotiations sooner, as defendant had suggested in February. The record reflects that prior to Mr. Calloway's letter of November 3, 1994, the claims presented by the estate of Micah Wiedinmyer and the estate of Sean Rocks proceeded along separate paths, although made upon the same insurance policy proceeds. It was not until Mr. Calloway's November 3, 1994 letter that *either* estate indicated, within this record, that it was willing to agree to an equal split of the proceeds. Settlement of the claims of both estates came less than one month later.

Again, we see nothing in this record from which a reasonable jury could find bad faith on the part of defendant by clear and convincing evidence. Up until plaintiff's demand for arbitration, defendant was in regular—if not constant—contact with counsel for both estates. Defendant requested and reviewed documents. Defendant made clear to plaintiff its position that both estates would have to enter into an agreement in order for a payment to be made upon the policy. Defendant suggested that plaintiff's counsel contact Mr. Calloway.

Following plaintiff's demand for arbitration on April 6, 1994, the record is silent as to any further actions taken or not taken by defendant to process plaintiff's claim, and the matter appears to have been transferred to counsel. Although the record is not detailed on this point, the stipulation of facts appears to indicate that some level of settlement negotiations took place between counsel following the demand for arbitration. (See Mr. Liebman's letter to Mr. Haggerty of July 21, 1994.) There certainly is nothing in the stipulation providing clear and convinc-

ing evidence of bad faith by defendant, either in the period prior to plaintiff's demand for arbitration or after.

While it might conceivably be argued that defendant was negligent in failing to attempt more forcefully to bring the two estates together to conduct the negotiations required to arrange the split of the Griscom proceeds which defendant believed was necessary, this is not indicative of bad faith given that defendant's position had been clearly expressed to plaintiff. While it might conceivably be argued that defendant was negligent in failing to more actively pursue settlement following plaintiff's demand for arbitration or to respond more expeditiously to that demand, this also—standing alone—is not clear and compelling evidence of bad faith. We note that plaintiff's demand for arbitration came prior to defendant receiving all of the documentation requested of the estate of Sean Rocks. We further note that the first clear statement in the record that *either* side was willing to accept the division of the Griscom policy benefits eventually agreed to does not come until Mr. Calloway's letter of November 4, 1994, less than one month prior to the actual settlement and *after* plaintiff filed this action alleging that defendant acted in bad faith.

The record presented, viewed in the light most favorable to plaintiff, simply is insufficient, as a matter of law, for a reasonable jury to find by clear and convincing evidence that defendant acted in bad faith in its handling of plaintiff's claim.

For all the foregoing reasons, this court's order of June 4, 1999, granting defendant's motion for summary judgment, should be affirmed.